# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTALDER VICENTE, | Case No.: |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| EQUIFAX INFORMATION SERVICES, LLC and HARBORONE CREDIT UNION. | |
| Defendants. | |

Plaintiff, Estalder Vicente ("Plaintiff"), by and through the undersigned counsel, hereby brings this Complaint and Demand for Jury Trial ("Complaint) against Equifax Information Services, LLC ("Equifax" or "Defendant") and Harborone Credit Union ("Harborone" or "Defendant") (collectively, the "Defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681 *et seq*.

2.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff Estalder Vicente is a natural person who resides in Fall River, Massachusetts, within the confines of Bristol County, Massachusetts. Plaintiff is a "consumer" as that term is identified by 15 U.S.C. § 1681a(c).

5. Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309, and is authorized to do business in the State of Wisconsin, including within this District.

6. Defendant, Harborone is a loan servicer with its principal place of business located at 770 Oak St., Brockton, MA 02301, who regularly transacts business within the state of Massachusetts. Harborone is an entity which engaged in the practice of furnishing consumer information to consumer reporting agencies and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b), and other sections of the FCRA.

7. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

9. In or around January April 2023, the Plaintiff applied for a home loan with Stonegate Mortgage ("Stonegate").

10. As part of this mortgage application, Stonegate was required to pull his credit reports from the CRAs to determine his eligibility for his mortgage application.

11. Upon review, the Plaintiff found out that Harborone Mortgage was reporting on his credit report.

12. Upon information and belief, this Harborone Mortgage account reporting related to a foreclosure that occurred on the Plaintiff's property in 2012 (property address 180 Main St. Unit 6-205, Bridgewater, MA).

13. Of note, the Harborone Mortgage was only reporting on his Equifax report and was not reporting on any other consumer report from any other consumer reporting agency, such as Experian Information Solutions, Inc., and Trans Union, LLC.

14. The Plaintiff subsequently reached out to the Equifax, nonparty Experian Information Solutions, Inc., Trans Union, LLC (collectively "Credit Reporting Agencies or CRAs"), and to Harborone directly to dispute the credit reporting of his account, even though he only saw it reporting in his Equifax report.

15. The Plaintiff originally disputed the Harborone account with Equifax in or around March 2024.

16. Upon information and belief, Equifax forwarded the Plaintiff's dispute to Harborone.

17. The Plaintiff received a response from Equifax dated April 26, 2024 in relation to his dispute.

18. In Equifax's April 26, 2024 response, they stated "THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THIS ACCOUNT HAS NOT BEEN CLOSED. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *HISTORICAL ACCOUNT INFORMATION."

19. Equifax's April 26, 2024 response also showed that the "Date of Last Payment was March 2012.

20. Despite the last payment being reported in 2012, Equifax was reporting the account as "PAYS_AS_AGREED" in 2023 and 2024.

21. In or around November 2024, the Plaintiff applied for and was approved for a credit card account with nonparty JP Morgan Chase Bank, NA.

22. Upon information and belief, had this Harborone account not been reporting on the Plaintiff's credit report, the Plaintiff would have been approved for a greater credit limit.

23. Since the account was still reflecting on his Equifax credit report, the Plaintiff re-disputed the account in or around February 2025.

24. To be safe, the Plaintiff also sent disputes to nonparties Experian Information Solutions, Inc. and Trans Union, LLC even though they weren't reporting the account to ensure the account wouldn't be re-added to his consumer reports.

25. Within this dispute, the Plaintiff included a copy of the 2012 foreclosure deed referencing Harborone selling the property through a foreclosure.

26. Upon information and belief, Equifax received the Plaintiff's February 2025 dispute letter.

27. Upon information and belief, Equifax forwarded the Plaintiff's dispute letter to Harborone.

28. Plaintiff received a response from Equifax dated March 5, 2025.

29. In Equifax's March 5, 2025 response, Equifax stated "THIS ACCOUNT IS CURRENTLY REPORTING AS AGREED, WITH NO LATE PAYMENTS. THIS ACCOUNT HAS BEEN UPDATED. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *SCHEDULED

PAYMENT *ACTIVITY DESIGNATOR *STATUS *DATE OF MAJOR DELINQUENCY FIRST REPORTED *DATE OF LAST PAYMENT *HISTORICAL ACOUNT INFORMATION *ACCOUNT HISTORY."

30. Equifax then began reporting the account as "charged off".

31. Equifax still reported the Plaintiff's date of last payment as March 1, 2012.

32. Equifax was reporting that the balance amount is $29,514.

33. As such, this Harborone account should be "aged off"

34. Plaintiff has been interested in opening new lines of credit and increasing current credit line allowances to strengthen his overall credit profile.

35. Plaintiff also wishes to obtain a new mortgage.

36. Upon information and belief, this outdated Harborone tradeline on his Equifax credit report.

37. Upon information and belief, the Defendants have been on notice about the specific and systemic inaccuracies and limitations of its gathering, compiling, and reporting of inaccurate credit information on credit reports and other third-party information for over a decade.

38. Therefore, upon information and belief, the Defendants do not maintain and/or employ reasonable procedures to assure maximum possible accuracy of the information each reports in Plaintiff's consumer reports, because it would be less profitable to do so.

39. Upon information and belief, creditors take a consumer's available credit and payment history into account in determining what amount of credit to offer the consumer.

40. Upon information and belief, the credit report obtained by potential creditors and/or reviewed the Plaintiff for promotional offers via Equifax contained the Inaccurate Tradelines.

41. Moreover, Equifax has sent Plaintiff's consumer reports to potential creditors in response to promotional and/or account review inquiries.

42. Upon information and belief, the creditors who viewed Plaintiff's credit reports via promotional and/or account reviewed inquiries received credit reports which also contained the Inaccurate Tradeline.

43. Upon information and belief, but for the existence of the Inaccurate Tradelines in the credit reports received by these prospective creditors, Plaintiff would have received more offers for credit than he did.

44. Plaintiff has been extremely worried, distressed, and frustrated by the circumstances caused by each of the Defendants. Plaintiff maintains a positive credit profile and is aware how problematic errors in one's credit report can be.

45. Since learning of the inaccurate reporting by each of the Defendants, Plaintiff has been preoccupied by thinking about these circumstances nearly all day, every day.

46. Plaintiff has expressed his stress related to the facts of this case.

47. To that end, Plaintiff has lost sleep multiple nights because of his preoccupation with the harms befallen his credit at the hands of the Defendants, and concerns about the impact that this could have on him in the future.

48. Plaintiff hopes to eventually obtain new credit such as a new mortgage, and harbors legitimate concerns he will be unable to do so with errors in his Equifax credit reports – particularly errors like those being currently reported by the Defendant.

49. As a direct result of the Defendants' conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: reduced creditworthiness, stress, anxiety, frustration, sadness, sleepless nights, and a substantial amount of wasted time.

## COUNT I
### Violations of the FCRA, 15 U.S.C. V 1681 *et seq.*

50.  Plaintiff incorporates by reference all previous paragraphs of this Complaint as though fully stated herein.

51.  The FCRA requires a credit reporting agency, either after receiving notice that a consumer disputes information that is being reported by a furnisher, to conduct a reasonable investigation with respect to the disputed information.

52.  Equifax failed to conduct a reasonable investigation under 15 U.S.C. §1681i.

53.  Equifax failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports, information and files, in violation of 15 U.S.C. §1681e(b).

54.  Equifax violated 15 U.S.C. §§1681n and 1681o of the FCRA by willfully engaging in the following conduct that violates §1681s-2(a), (b):

   A. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiffs disputed;

   B. Willfully and negligently failing to review all relevant information concerning Plaintiff's files;

   C. Willfully and negligently failing to report the inaccurate status of the inaccurate information to add credit reporting agencies;

   D. Willfully and negligently failing to properly participate, investigate and comply with the re-investigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff; and

E. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiffs to other credit reporting agencies.

55. Equifax failed to conduct a reasonable investigation following receipt of a dispute.

56. Upon information and belief, after the CRAs received Plaintiff's dispute letters, Experian, Trans Union, and Equifax provided notice of said disputes to Harborone.

57. The FCRA requires furnishers such as Harborone, either after receiving notice directly from the consumer or from a credit reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information. The investigation involves (a) reviewing all relevant information, (b) reporting the results of the investigation to the credit reporting agency, and (c) if the investigation reveals that the information is incomplete or inaccurate, reporting those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

58. Harborone failed to conduct a reasonable investigation following receipt of Plaintiff's disputes under 15 U.S.C. §1681s-2(b).

59. Harborone has willfully provided inaccurate information to Equifax.

60. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendants are liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. §1681n.

**61.** As a result of the above-described violations Plaintiff has sustained damages including loss of the opportunities to obtain credit or better credit conditions, emotional distress, and mental and physical pain.

**62.** Defendants' violation of the FCRA was willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## TRIAL BY JURY

**63.** Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Estalder Vicente, respectfully requests judgment be entered against the Defendants for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

Respectfully submitted this 7th day of May, 2025,

> */s/ Nicola Yousif*
> Nicola S. Yousif
> MA No. 679545
> Shield Law, LLC
> 157 Belmont Street,
> Brockton, MA 02301
> T: (508) 588-7300
> E: nick@shieldlaw.com

*/s/ Matthew A. McKenna*
Matthew A. McKenna
MA No. 705644
Shield Law, LLC
237 South St. Unit 110
Waukesha, WI 53186
T: (262) 420-5953
E: matt@shieldlaw.com

*Attorneys for Plaintiff*
*Estalder Vicente*
